Judges of the United States Court of Appeals to the Second Surgeon, hear ye, hear ye, hear ye. All persons having business before this, stand and talk on the United States Court of Appeals to the Second Surgeon. Join me here, give your attention, and you shall be heard. Thank you. Good afternoon. Please be seated. We have argument from Washington on video. Yes, Your Honor. Yes. So we'll hear first from the appellant who is here in this courtroom. That's you. I apologize, Your Honor. May it please the Court, I'm Nancy Martin. I do represent the petitioner, Coy Jenego. Mr. Jenego is a permanent resident. He became a permanent resident of the United States in 2001. In 2012, he was convicted of burglary in the third degree under Connecticut's statutes for conduct that occurred in 2008. He was charged with removability, and after two times in front of the immigration judge and two appeals to the Board of Immigration Appeals, the sole issue that was presented to this court and the sole issue that remained to be decided was whether his conviction of burglary third constituted an aggravated felony under 18 U.S.C. 16B. While this case was pending, demeanor was decided by the United States Supreme Court, and in the petitioner's opinion is dispositive of that issue, as 18 U.S.C. 16B has been determined to be unconstitutional. That was the sole remaining basis for the charge of removability against Mr. Jenego. We ask that the case be terminated. I don't think the government can retreat to 16A. They waived that, or it's not part of the case. It has not been part of the case, Your Honor. It's not been raised. I would argue that it's been waived, but I don't think as a matter of law that they could held in the first that that's not an element of the crime of burglary under the Connecticut statute. Violence is not an element. Your client did at one point say that it should be sent back to the BIA. Now, there's some confusion. I want to be clear that it is your client who is taking the position that you are taking. Yes, Your Honor. The original request was for termination of proceedings upon a finding that he was not removable. At the time that DiMaio was decided, and there was a little bit of briefing before this court, some letter briefs, we asked again that the case be terminated. Subsequent to that, just in an effort by my client who's been under the specter of removal for five years to try to find the manner that would result in the most expeditious resolution of the case, we did ask for permission to stipulate to a remand in the belief at that time that that could be the most expeditious way for him to resolve his case. And now? Well, there are, Your Honor, I believe that termination is the quicker way for him at this point. Yes, but you haven't answered my question. Oh, I'm sorry, Your Honor. My question is, does your client want termination now? Yes, because he believes it's the quickest way to resolve this case, Your Honor. I don't care about what. Okay. I want to know if you are representing your client when you say termination, or you are representing a cause because it is your client that is before us. So you tell us that he wants termination now for whatever reason. Correct, Your Honor. Okay. Thank you.  We reserve one minute for rebuttal. Yes, Your Honor. We have a petitioner from the amicus appointed by this court for which the court is always grateful. Thank you. You may proceed. Good afternoon. May it please the court. I'm Valerie Cahan on behalf of amicus counsel, Velia Hayes, for the petitioner Quagenego. As petitioner's counsel mentioned, the sole ground remaining for his removal is that his conviction for third degree burglary in Connecticut is an aggravated felony crime of violence under Section 16B. The Supreme Court has eliminated Section 16B as a ground for removal, and therefore the petition for review should be granted and immigration proceedings terminated. Petitioner's counsel and the government agree that DiMaia controls this case. The only issue in dispute is whether this case needs to be remanded to the board for further consideration. The government initially asserted in its letter to the court that remand is necessary to consider the impact of DiMaia on its previous analysis. But this is not the case where the board must be given the opportunity to consider DiMaia. As the government recognizes, remand is unnecessary if it would be pointless or futile. It would be futile to remand this case because the Supreme Court has decided the 16B issue conclusively. Any decision in conflict with DiMaia would be clearly an error. Now the government relies on Orlando Ventura as justifying remand. In Orlando Ventura, the Supreme Court recognized that the law allowed the agency to make the basic asylum decision at issue in that case. There are two important parts of Orlando Ventura. First, the court held that generally speaking, the court of appeals should remand a case to an agency for decision of a matter that the statutes place primarily in agency hands. The court also noted that remand would be proper for the board to conduct additional investigation or explanation. Neither of those is the case here. In Orlando Ventura, the remand was... We don't need the government to tell us what DiMaia says. I'm sorry? We don't need the government to tell us what DiMaia says. I think DiMaia is very clear. The Supreme Court said that 16B is invalid and constitutionally infirm, and therefore it can't be the grounds for removal. In Orlando Ventura, remand was required because the Ninth Circuit, in reviewing the denial of a request for asylum, actually looked at the record evidence and evaluated facts to make a decision about changed country circumstances that the board hadn't even considered. The Supreme Court reversed because the agency has the authority to make that initial determination and remanded to give the board the chance to do so. In its brief, in response to your brief, the government suggests that DHS regulations allow them to lodge additional or substitute factual allegation and charges of removability. And they cite 8 CFR 1003.30, do you have an understanding of what the scope of that regulation is? What can the government do in addition to what's already been done? So that regulation does allow the government to add new factual allegations or charges of removability, as you said. But this case has been pending for five years, and it's been nine months since DiMaia was decided. They haven't attempted to do so in the meantime, and they don't even suggest that they have a basis to do so. So any argument that that's a reason for remand is totally speculative. As co-counsel suggested, 16A wouldn't be appropriate. That's correct. In this case. That's correct. The immigration judge already decided that the Connecticut statute doesn't meet the definition in 16A. Continue. Sure. The issue presented here is the same narrow constitutional issue presented by DiMaia, whether the federal criminal statute that Mr. Genego's removal is based on is valid. Constitutional law and federal and state criminal law are not areas of expertise that require remand to the board, as this court has recognized in James v. Mukasey. This is not a case like Orlando Ventura where the agency hadn't already considered the issue. Both the immigration judge and the board applied the same analysis that was rejected by the Supreme Court in DiMaia. Mr. Genego raised this issue in his petition for review, and it's ripe for decision now. If on remand the board decides this legal issue against Mr. Genego, that would be a blatant error subject to review in this court. One other argument that the government raised in its brief is that this court should remand to the agency even if the remand may result in the board ordering termination without more. We don't think that that's necessary, especially in light of the delays inherent in proceedings before the board. There have been 11 decisions in the courts of appeals to consider DiMaia, and in five cases the order of the board was vacated, at least with respect to the 16B. That's what we're asking the court to do here. Once the removal order has been vacated, there's nothing else that needs to be considered by the board, and the removal proceedings should be terminated. Did any of those cases actually terminate, or did they send back to the board? In one case, the Fourth Circuit, in Mauricio Vasquez, remanded to the board with instructions to terminate, and in another case, Bessarol, Guadarrama v. Sessions, the Ninth Circuit vacated the order and issued a mandate without a remand order. Do you have any objection to our vacating, remanding to the board with instructions to terminate? No. If this court is going to remand, it should be with instructions to terminate. We've done analogous things in other situations, in seeing a salary order and a couple of other opinion cases. That's exactly what I was going to say, yes. You've done this before. Is there any substantive difference between doing that, besides the timeline between doing that and us terminating here? No. It really is just the issue of timing. But a remand with instructions, as opposed to a more general remand, does decide the issue conclusively for Mr. Genigo, which is really what we want here. Thank you. I'm totally out of time. Thank you. Thank you, counsel. We'll hear from the government. Ms. Park. Good afternoon, Your Honors. May it please the court, Song Park for the Attorney General. The parties do not disagree in this matter that Mr. Genigo is no longer removable on the 16B crime of violence aggravated felony ground. The Supreme Court in Damia conclusively held that 16B was constitutionally vague and therefore can no longer support the grant of removability against Mr. Genigo. The government respectfully submits, though, Your Honors, that it would be worthwhile to remand this matter back to the Board of Immigration Appeals, even if, as Amicus Counsel noted, that the board may simply terminate without more. Demand to do what if we don't give them instructions? What could they do? Well, as a general matter, the remand process is the traditional manner of communication the court has used in past cases in order to communicate its mandate to the agency. And when the agency . . . Look, Chenery, which is ultimately what you rely on, says that the agency must correct its errors rather than courts. But it says that we have interpreted that only where it is not futile. And we have read that futility exception very broadly in favor of the government to uphold any number of orders of the BIA when there have been errors but we thought that the BIA would have to decide the same way. Now, if we have done that regularly and do it in a way that is essential to the BIA on one side, why shouldn't we do the same thing when it's the other side and when you have given us no reason to think that there is any other result? I think there are also administrative considerations for the court to take into consideration. That is to say, the cleanest way to ensure, Mr. Genigo, that proceedings are terminated and this court's mandate is followed is to remand to the board so that to the extent that there is this prior removal order issued against Mr. Genigo in the records, that the agency has this order of remand from the court so that it can ensure . . . Do you have any objection to our remanding with instructions to terminate? No, Your Honor. I think the court has the authority and would be within its purview to do so. Oh, so you have no objection to that and the other side has no objection to that either? Do you concede, counsel, that these proceedings must be terminated either by the BIA or by us? I think with respect to the charge of 16B, grounded removability, yes, Your Honor. It's clear that Mr. Genigo has a felony offense under that provision, under either 16A or 16B. I think, though, it's also important to keep in mind is that the board's decision at issue before this court was issued approximately three years ago. I believe it was in February of 2016 that the board issued its order. So it has not been an insignificant amount of time that has gone by and by remanding to the board, it would also assure the agency an opportunity to make sure there, for instance, may not have been additional criminal history that has been . . . But what additional . And, that may also be the process the agency may  up  if any terminated by the board. I think the government's position here is only that the proper, pursuant to the proper administrative process, it would be better for both Mr. Genigo as well as for any agency considerations for remand to, of this case, back to the board, whether it be with or without Mr. Genigo. Is that clear instruction enough? Yes. I don't think there's any confusion as to the clarity with respect to what is on Mr. Genigo's removal ground is. I think it's also an administrative question, it's a process question in terms of ensuring what is the most efficient  ensure remand to the board. Is this court, by opinion, terminated the proceedings against Mr. Genigo? It would, Your Honor. Again, the court could certainly do that as it has in other cases, although it has not done so rarely in a minority of cases. But I think what the government would ask the court to do is to remand because it is the cleanest and most efficient way to ensure that there is no longer removal orders issued against Mr. Genigo. I want to be very clear that the government has no objection to our remanding with an instruction to terminate the case. You have said that, and I want to be clear that that is what you are saying. Correct, Your Honor. Okay. Good. I have that. If there are no other questions . . . Thank you. Thank you, Your Honors. Thank you. Each of the witnesses will start with Nancy Marvin. Thank you, Your Honor. I would respectfully disagree that it is as efficient to remand to the Board  the instructions to terminate because all of that processing does take time. I would also introduce . . . I'm sorry, Your Honor. Are you aware of any aspect of your client's background which the government would be able to put anew before the BIA or the IJ? No, Your Honor. This is his sole arrest.  because of the partial government shutdown, there are aspects of the Immigration Court in Hartford, where I practiced, Your Honor, and where he was originally ordered removed, that are not going forward. They are only dealing with detained cases. I don't know if the BIA has implemented a similar restriction on the work that they will do or if they may implement something if the shutdown were to continue. But in any event, it's unlikely to be as efficient as an order from this court. I ask that you terminate. Thank you. Counsel? Ms. Cahan? Hello. I just have one quick point. I have to tell you, all the cases that you argue are not going to be this easy. Okay. So the government agrees that the BIA controls this case. To the extent that it can do, and then terminate the proceedings. Do you have a case in which we have actually terminated ourselves as against ordering the BIA to terminate? That's what we did in Prius. That's what we did in several cases, Collier and in Singh, by summary order. We have actually not terminated ourselves. Now, it may be that because of a government shutdown, that becomes an appropriate measure just because of what is going on, but we've not done that before, have we? That's correct. Thank you. Thank you. Thank you both. I thank the amicus again for contributing to this case. That being the conclusion of the calendar, I'll ask the clerk to adjourn. Thank you